## EMPLOYMENT, CONFIDENTIALITY & NON-CIRCUMVENTION AGREEMENT

This Employment, Confidentiality, and Non-Circumvention Agreement (this "Agreement") is dated below by and between the undersigned (the "Employee" or "Recipient") and ERTC Express LLC (the "Disclosing Party" or "ERTC Express") regarding the employment of Employee by ERTC Express.

1. **Accountability, Honesty, Integrity, and Teamwork. (AHIT)** The Employee represents and warrants that it shall uphold the highest standards of accountability, honesty, integrity, transparency, and teamwork. The Employee undertakes a duty of full disclosure to ERTC Express of any relevant material at any time.

2. **Confidential Information, Representatives.** The Recipient is an employee of ERTC Express and would like to remain an employee of the Disclosing Party. The Disclosing Party is prepared to make available to the Recipient certain confidential, non-public or proprietary information concerning the business, operations, client lists, funding sources, and assets of the Disclosing Party (the "Confidential Information"). The Recipient and its representatives, advisors, lenders, shareholders, directors, officers, and employees agree to treat the Confidential Information in accordance with the provisions of this Agreement and to take or abstain from taking certain other actions hereinafter set forth. As required for Recipient's responsibilities as an employee of ERTC Express, the Disclosing Party has made and will make available to the Recipient certain confidential, non-public, trade secret, protected, or proprietary information concerning the business, systems, policies, procedures operations, materials, client lists, client data, financial data, Employee Retention Tax Credit ("ERTC") funding sources, lockbox service providers, vendors, suppliers, prospects, assets, pricing information, know-how concerning ERTCs, client financial and personal data, data security procedures, marketing strategies, assets of the Disclosing Party (the "Confidential Information"). The Disclosing Party reserves the right to further identify Confidential Information in the future.

3. **Excluded Information.** The Confidential Information shall not include information that (i) is or becomes generally available to the public other than as a result of acts by the Recipient in breach of the terms of this Agreement, (ii) is independently derived by the Recipient without the aid, application, or use of the Confidential Information, (iii) is disclosed to the Recipient by a third party on a non-confidential basis, (iv) the Recipient had no prior knowledge of any part of the confidential information before the Disclosing Party gave them access to it; or (v) is required to be disclosed by applicable law or regulation.

4. **Consideration.** As consideration to Employee for executing this Agreement, ERTC Express shall provide Employee with $1,000 upon the signing of this Agreement. As further consideration, ERTC Express shall provide Employee with a $10,000 "pay it forward" appreciation bonus; eligibility for the appreciation bonus is subject to continued active employment with ERTC Express and the appreciation bonus is to be paid out quarterly post quarter end in increments of $2,500. In addition, consideration for Employee's signing of this Agreement shall also include Employee's continued employment with ERTC Express.

Exhibit A

5. **Non-Disclosure of Confidential Information.** The Recipient shall use the Confidential Information solely for the purpose of Recipient's duties and responsibilities as an employee of ERTC Express. The Recipient agrees to continue to hold the Confidential Information in trust and confidence indefinitely. The Recipient shall use its best efforts to keep the Confidential Information in confidence and shall not disclose any of the Confidential Information to any other person or entity, provided, however, that the Recipient may make any disclosure of Confidential Information to the Recipient's Representatives who need to know such information for the purpose of Recipient's employment by ERTC Express and who agree to keep such information in confidence. The Recipient will not disclose or permit inevitable disclosure of such Confidential Information, and the Recipient shall be solely and directly responsible for all persons who obtain Confidential Information by or through the Recipient or the Recipient's Representatives. The Recipient shall not otherwise permit such Confidential Information to be available or accessible, stored electronically or otherwise, published, distributed, transmitted, or delivered in any form whatsoever to anyone else. Without limitation to these obligations, all Confidential Information will be safeguarded with the highest degree of care to avoid disclosure, and shall, to the extent reasonably possible, be preserved bug- and virus-free. The Recipient shall not allow or permit any such Confidential Information to be knowingly or negligently misappropriated or used (directly or indirectly, by independent research, reverse engineering, decompiling, or otherwise) by the Recipient or the Recipient's Representatives for their own benefit or for the benefit of others, except in conjunction with discussions and meetings between the Disclosing Party and the Recipient and agreements or actions arising therefrom or related thereto.

6. **Retroactive Application for Confidential Information.** This agreement further applies to Confidential Information already disclosed to the Recipient by the Disclosing Party. By signing this agreement, the recipient certifies that any Confidential Information already disclosed to the Recipient by the Disclosing Party has not been disclosed. This previously disclosed Confidential Information is under the same rules and restrictions outlined in this document for future disclosure of Confidential Information. This retroactive protection of Confidential Information, along with the entirety of the Agreement, is necessary due to a failure when bringing on current employees, neglecting to facilitate, provide or execute agreements covering employment, confidentiality, non-circumvention, and non-solicitation.

7. **Return of Confidential Information.** Promptly upon the written request of the Disclosing Party, the Recipient will return all copies of the Confidential Information to the Disclosing Party or destroy all Confidential Information and certify such destruction to the Disclosing Party.

8. **Subpoena or Court Order.** In the event that the Recipient or anyone to whom it discloses the Confidential Information receives a request to disclose all or any part of the Confidential Information under the terms of a subpoena or other order issued by a court of competent jurisdiction or by another governmental agency, the Recipient shall (i) if practicable, promptly notify the Disclosing Party of the existence, terms, and circumstances surrounding such a request and consult with the Disclosing Party on the advisability of taking steps to resist or narrow such a request, (ii) if disclosure of such Confidential Information is required, furnish only such portion of the Confidential Information as the Recipient is required to disclose, and (iii)

9. **Employee Production Requirements.** Employee shall be required to meet certain production and time requirements as a condition of continued employment. These requirements for the months after the signing of this Agreement are as follows: (1) Month One – Employee is required to spend at least three (3) hours per day in calls with potential clients on behalf of ERTC Express and complete/close at least ten (10) deals per week; (2) Month Two – Employee is required to spend at least three and half (3.5) hours per day in calls with potential clients on behalf of ERTC Express and complete/close at least fifteen (15) deals per week; (3) Month Three – Employee is required to spend at least four (4) hours per day in calls with potential clients on behalf of ERTC Express and complete/close at least twenty (20) deals per week. Requirements for subsequent months are subject to change upon notification by ERTC Express; however, the minimum requirements for all subsequent months shall be the minimum requirements set forth for Month Three. If any weekly deal production goals or time requirements are not met, Employee is subject to involuntary separation at the discretion of ERTC Express. Employee compensation shall be outlined in a separate agreement.

10. **Exempt Employee.** Employee understands and agrees that Employee is working as an exempt employee pursuant to United States Department of Labor's revised regulations located at 29 C.F.R. Part 541. Exempt employees are not eligible to receive overtime compensation. It is understood that employees who are not eligible for overtime may work extended hours.

11. **Non-Circumvention.** Employee agrees that ERTC Express may introduce (whether by written, oral, data, or other form of communication) Employee to one or more funding source, lockbox service provider, contact, client, partner, or affiliate related to ERTCs (an "Opportunity" or "Opportunities"). Any Opportunity to which ERTC Express introduces or connects Employee to involving ERTC Express's ERTC-related matters to which Employee was not aware shall be considered be covered by this Non-Circumvention provision and other terms of this Agreement. Employee agrees that it shall not enter into, or otherwise arrange (either for itself, another person or entity) any business relationship regarding an Opportunity nor contact any person regarding an Opportunity, either directly or indirectly, nor accept any compensation or advantage in relation to such Opportunity except directly through ERTC Express, without the prior written approval of ERTC Express. Employee shall not introduce any clients of ERTC Express to any business opportunities outside of ERTC Express. Any leads Employee submits to ERTC Express become a "Protected Account" of ERTC Express subject to this Agreement. Employee hereby irrevocably agrees and warrants that neither it nor its affiliates shall directly or indirectly, interfere with, circumvent, attempt to circumvent, avoid or bypass ERTC Express from any transactions involving Protected Accounts or Opportunities, or obviate or interfere with the relationship between ERTC Express and any party for the purpose of gaining any benefit, whether such benefit is monetary or otherwise. Employee may not work with Protected Accounts on ERTC-related matters without the consent and cooperation of ERTC Express. Employee may not work for other companies in the United States similar to ERTC Express on ERTC-related matters without the consent of ERTC Express for a period of two (2) years from the date employment ends. ERTC Express is relying on Employee's assent to these terms and Employee's intent to be bound by this Non-Circumvention provision by evidence of Employee's signature on this Agreement. Without Employee's signed assent to these terms, ERTC Express

would not introduce or provide access to any Opportunity, Protected Account or disclose any Confidential Information to Employee as herein described.

12. **Non-Solicitation.** During the Employee's employment by ERTC Express and for a period of two (2) years after the date employment with ERTC Express ends for any reason, Employee will not, directly or indirectly, (i) hire, engage or solicit to hire or engage any individual who is engaged as a contractor or consultant or employed by ERTC Express or who was engaged as a contractor or consultant or employed by ERTC Express within twelve (12) months of the proposed solicitation, hire or engagement, (ii) otherwise induce or attempt to induce any individual who is engaged as a contractor or consultant or employed by ERTC Express to terminate such engagement or employment, (iii) in any way interfere with the relationship between ERTC Express and any individual who is engaged as a contractor or consultant or employed by ERTC Express; (d) contact, solicit, divert, appropriate or call upon with the intent of doing business with (other than for the exclusive benefit of ERTC Express) any customer of ERTC Express if the purpose of such activity is to solicit such customer or prospective customer for a competing business, to encourage such customer to discontinue, reduce or adversely alter the amount of such customer's business with ERTC Express or to otherwise interfere with the ERTC Express's relationship with such customer, or (e) in any way interfere with the ERTC Express's relationship with any certified public accountant, service provider or other business relation of ERTC Express.

13. **Cybersecurity.** Employee agrees that performance of this Agreement may be threatened by a third-party encroachment on the informational or operational technology of either ERTC Express or Employee ("Cybersecurity Incident"). Cybersecurity Incidents include: (i) material attempts to gain unauthorized access to a system or its data; (ii) unwanted disruption or denial of service; (iii) the unauthorized use of a system for the processing or storage of data; and (iv) changes to system hardware, firmware, or software characteristics without the owner's knowledge, instruction, or consent. Employee agrees to follow industry standard practices to ensure that effective cybersecurity controls are used and to take reasonable steps to protect proprietary extraction, processing, transportation, distribution, and delivery technologies and processes from a Cybersecurity Incident. Employee agrees that it will notify the ERTC Express as soon as reasonably possible of any Cyber Security Incident that involves the loss of, theft of, unauthorized access to or unauthorized disclosure or use of any ERTC Express-related information technology, resources, or data, and that could reasonably be expected to have the potential to have a material adverse impact on ERTC Express or its clients. Employee shall keep the ERTC Express reasonably apprised of the Employee's response to the Cyber Security Incident, including the Employee's assessment of the impact of the Cyber Security Incident on ERTC Express and the Employee's remediation efforts.

14. **Data Protection.** Employee acknowledges that it may have access to certain of ERTC Express's computers, communications systems, and networks for the purposes set forth in this Agreement. If any data is made available or accessible to Employee pertaining to the ERTC Express's business or financial affairs, or to ERTC Express's projects, transactions, clients, or customers, Employee will not store, copy, analyze, monitor or otherwise use that data except for the purposes set forth in the Agreement for the benefit of ERTC Express. Employee will comply fully with all applicable laws, regulations, and government orders relating to personally

customers, Employee will not store, copy, analyze, monitor or otherwise use that data except for the purposes set forth in the Agreement for the benefit of ERTC Express. Employee will comply fully with all applicable laws, regulations, and government orders relating to personally identifiable information ("PII") and data privacy with respect to any such data that Employee receives or has access to under this Agreement or in connection with the performance of any services for ERTC Express, its affiliates, customers, and clients. Employee will protect PII and will not use, disclose, or transfer across borders or otherwise such PII except as necessary to perform under the Agreement or as authorized subject to or in accordance with applicable law. To the extent that Employee receives PII related to the performance of the Agreement, Employee will protect the privacy and legal rights of ERTC Express, its affiliates, personnel, clients, customers, and contractors.

15. **Intellectual Property.** Nothing contained in this Agreement will be construed as granting or conferring any intellectual property, patent, copyright, trademark, trade secret, or any other proprietary rights by license or otherwise, whether expressly written or implied herein or otherwise, for any trademark, trade name, logo, logotype, invention, discovery, or improvement made, conceived, or acquired prior to or after the date of this Agreement. All such rights shall be, become, and remain the sole property of the Disclosing Party.

16. **Media.** The Recipient shall not issue or permit any media release or public comment regarding ERTC Express, this Agreement or the Confidential Information without the prior written consent of the Disclosing Party. Employee agrees and consents to visual media (e.g., photos, videos) of Employee during the course of work being used by ERTC Express for promotional and other purposes, including but not limited to websites.

17. **Remedies.** The Recipient and the Disclosing Party acknowledge that in the event of any breach of the terms of this Agreement, the Disclosing Party may not be made whole by monetary damages. Accordingly, the Disclosing Party, in addition to any other remedy to which it may be entitled in law or in equity, shall be entitled to seek an injunction to prevent breaches of the terms of this Agreement. No bond or other security will be required in connection with the pursuit of an injunction.

18. **Indemnity.** The Recipient hereby agrees to indemnify, defend, and hold the Disclosing Party harmless from and against any and all suits, liabilities, causes of action, claims, losses, damages, or expenses of any kind (including reasonable attorneys' fees and expenses) incurred or suffered by the Disclosing Party arising from or in connection with a breach of this Agreement, including without limitation unauthorized use or disclosure of the Confidential Information in violation of this Agreement, and negligent or intentional acts or omissions in the performance of this Agreement by the Recipient or the Recipient's representatives or persons to whom such persons reveal Confidential Information.

19. **Attorney's Fees.** In the event of any dispute arising out of the subject matter of this Agreement, the prevailing party shall be entitled to recover, in addition to any other damages assessed or relief afforded, its attorney fees and court costs incurred in litigating or otherwise settling or resolving such dispute hereunder.

20. **Governing Law.** This Agreement shall be governed by and construed in accordance with the appropriate laws of the State of Florida, without regard to the laws of conflict of laws. Exclusive venue for any court action related to this Agreement shall be in the State of Florida.

21. **WAIVER OF JURY TRIAL.** ERTC EXPRESS AND EMPLOYEE HERETO KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION (INCLUDING, BUT NOT LIMITED TO, ANY CLAIMS, CROSS-CLAIMS, COUNTER-CLAIMS, OR THIRD PARTY CLAIMS) ARISING OUT OF, UNDER, OR IN CONNECTION WITH THIS AGREEMENT OR BETWEEN THE PARTIES TO THIS AGREEMENT, THEIR AFFILIATES, SUBSIDIARIES, SUCCESSORS, OR ASSIGNS AND IRRESPECTIVE OF WHETHER SUCH LITIGATION ARISES OUT OF THIS AGREEMENT, BY STATUTE, OR AS A MATTER OF TORT LAW AND THE PARTIES HERETO EXPRESSLY CONSENT TO A NON-JURY TRIAL IN THE EVENT OF ANY OF THE FOREGOING.

22. **Entire Agreement, Amendment.** This Agreement (i) represents the entire understanding and agreement of the parties hereto with respect to the matters contained herein, and (ii) may be amended, modified, or waived only by a separate writing executed by the Recipient and the Disclosing Party expressly so amending, modifying, or waiving this Agreement.

23. **No Waiver.** No failure or delay by the Disclosing Party in exercising any right, power, or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right, power, or privilege hereunder.

24. **Survival.** The confidentiality requirements, covenants, agreements, and indemnity obligations of this Agreement will survive any termination of this Agreement. The non-solicitation and non-circumvention provisions will also survive any termination of this Agreement for the terms stated in each of these provisions

25. **Severability.** If any provision of this Agreement is found to violate any statute, regulation, rule, order, or decree of any governmental authority, court, agency, or exchange, such invalidity shall not be deemed to affect any other provision hereof or the validity of the remainder of this Agreement, and such invalid provision shall be deemed deleted from this Agreement to the minimum extent necessary to cure such violation.

26. **Affiliates.** All provisions hereof are binding upon and shall inure to the benefit of the respective parties and their successors and assigns. In addition, both the Recipient and the Disclosing Party expressly acknowledge and agree that this Agreement shall be binding upon each of their subsidiaries or other related and/or affiliated entities, which either the Recipient or the Disclosing Party may now or hereafter own or have any interest in.

27. **Assignment.** The Recipient may not assign or otherwise transfer any of its rights or obligations under this Agreement to any third party without the prior written consent of the Disclosing Party. No permitted assignment shall relieve the Recipient of the obligations hereunder. Assignment includes assignment, encumbrance, or transfer of any kind of all or any rights or obligations arising hereunder or pursuant hereto. Any assignment in violation of this Agreement shall be deemed null and void.

28. **Authority.** The Recipient hereby represents, warrants, and certifies to the Disclosing Party that it has authority to enter into this Agreement.

29. **Term.** This Agreement shall terminate and be of no further force or effect two (2) years from and after the date hereof. However, as stated above, all obligations related to Confidential Information and protection of trade secrets shall remain in effect. The non-solicitation and non-circumvention provisions will also survive any termination of this Agreement for the terms stated in each of these provisions

30. **Captions.** The captions contained in this Agreement are for convenience only and shall not affect the construction or interpretation of any provisions of this Agreement.

31. **Counterparts.** This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same Agreement.

IN WITNESS WHEREOF, THIS AGREEMENT is executed and delivered effective as of the date written below.

Signature: [signed]
John Souza
CEO
ERTC Express LLC
Date 2/2/2.23

Signature: [signed]
Employee Name: Derrick Willons
Position: Account Executive
Date 2/1/23